IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THEO STUBBS, | CASE NO. 1:24-cv-1482 |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| WARDEN HENRY, *et al.*,[1] | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

Pro se plaintiff Theo Stubbs filed this civil rights action alleging that Cuyahoga County Jail employees refused to permit him to identify as Muslim, and thereby interfered with his free exercise of religion. Doc. 1. Defendants have filed under Federal Civil Procedure Rule 12(c) a Motion for Judgment on the Pleadings. Doc. 26. They argue that Stubbs failed to exhaust his administrative remedies and failed to state a claim upon which relief can be granted. *Id*.

In response, Stubbs filed his own Motion for Judgment on the Pleadings, Doc. 28, which I construed as an opposition brief, *see* Order, 5/28/2025. Defendants filed a reply. Doc. 29. For the reasons explained below, I deny Defendants' motion.

---

[1] Stubbs named "Christopher Henry" as the Jail's Warden, Doc. 1, at 1, but Defendants state that "Michelle Henry" is the Jail's Warden, Doc. 12, at 1 n.1.

**Background facts**[2]

Stubbs was booked in the Cuyahoga County Jail in December 2023. Doc. 1 at 3, ¶11; Doc. 26 at 9. Defendants allege that when Stubbs was booked, he didn't designate his religious status. Doc. 26 at 17. Stubbs concedes that he was "not booked in as a Muslim." Doc. 1 at 3, ¶12. But, Stubbs alleges, he has been a Muslim since 2011, and sometime after he was booked, he sent a grievance to the Jail Chaplin, Pastor Givens, "to be sure I was labeled as Muslim." *Id*. at ¶¶11, 12.

Nevertheless, Stubbs alleges, he was not permitted to participate in the April 11, 2024 feast marking the end of Ramadan, Eid al-Fitr. *Id*. at 2, ¶9. He "was told by Pastor Givens and Corporal Dancy that the warden said anybody can fast during Ramadan but only Muslims can participate in the feast." *Id*. Stubbs contends that he "sent grievances to make sure I was labeled as Muslim and for Jummah ([F]riday prayer)." *Id*. "And after doing all of this," Stubbs writes, "I'm told that I am not Muslim and therefore couldn't be a part of the feast." *Id*. at 2–3. Stubbs alleges that "the Wardens … stated if a person was not booked in as Muslim, th[e]n they are not Muslim," *id*. at 3, ¶12, and that Paster Givens "said [Stubbs] wasn't Muslim when he is the Chaplain of Cuyahoga County Jail," *id*. at ¶11.

---

[2] These facts are primarily taken from Stubbs's Complaint. For context, I have included additional and seemingly non-material facts taken from Defendants' Motion.

2

Stubbs filed a Verified Complaint alleging 42 U.S.C. § 1983 claims against Warden Henry, Associate Warden Kevin O'Donnell, and Pastor Givens, in their individual and official capacities. *Id.* at 1–2, ¶¶4–7, at 5; Doc 12 at 1–2, ¶¶4–6. Stubbs alleges that Defendants violated his First Amendment right to free exercise of religion. Doc. 1 at 3, ¶13. He seeks declaratory and injunctive relief and compensatory and punitive damages. *Id.* at 3–4.

Defendants filed an Answer, in which they asserted an affirmative defense that Stubbs failed to exhaust his administrative remedies, a precondition to suit established by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Doc. 12 at 4. Defendants attached two grievances that Stubbs filed in jail—one dated March 18, 2024, Doc 12-1, and one dated April 8, 2024, Doc. 12-2.[3] In these grievances, Stubbs complains about the Ramadan meals that the Jail was serving—he twice complained that the portions were insufficient, and once complained that a breakfast was served after sunrise and therefore was received by Stubbs too late to eat it.[4] Doc. 12-1, 12-2. Defendants allege that Stubbs failed to appeal these grievances. Doc. 12, at 4.

---

[3] The parties did not authenticate the exhibits they attached to their motion papers. Neither side challenges the authenticity of the others' exhibits. In this Opinion, I assume that the parties' unauthenticated submissions are what they say they are.

[4] Ramadan observers fast from sunrise to sunset. *See, e.g., Sanderson v. Louisville Metro. Gov't,* No. 3:23-cv-138, 2024 WL 3184652, at *4 (W.D. Ky. June 26, 2024).

3

After they filed their Answer, Defendants filed under Rule 12(c) a Motion for Judgment on the Pleadings.[5] Doc. 26. In their Motion, Defendants argue that they are entitled to judgment because Stubbs failed to exhaust his administrative remedies. Doc. 26, at 13. Defendants also assert that Stubbs has failed to state a claim upon which relief can be granted, *id*. at 16–18; that Defendants are entitled to qualified immunity, *id*. at 18–21; and that Defendants cannot be held liable in their individual capacities for the compensatory and punitive damages that Stubbs seeks, *id*. at 21–22.

In his responsive brief, Stubbs refutes Defendants' legal arguments regarding whether he stated a viable claim for relief. Doc. 28 at 2–4. He attaches to his brief the same two grievances that Defendants filed, along with inmate request forms he had completed and other prison documents. Doc. 28-1 at 1–18. Defendants filed a reply brief in which they re-assert the arguments they presented in their Motion brief and raise some new ones, Doc. 29, which I discuss below.

**Rule 12(c) standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court evaluates a Rule 12(c) motion "using the same standard that applies to … a

---

[5] Stubbs alleges that Defendants' Motion was late. Doc. 28 at 5. But Stubbs's calculation is based on the old case management dates. *Id*. On March 25, I set April 25 as the deadline for Defendants to file their expected Rule 12(c) motion. *See* Doc. 25 at 2. Defendants filed their Motion on April 25. Doc. 26.

motion to dismiss under Rule 12(b)(6)." *Moore v. Hiram Twp., Ohio*, 988 F.3d 353, 357 (6th Cir. 2021). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When ruling on a defendant's motion to dismiss on the pleadings, a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 386–87 (6th Cir. 2022) (quoting *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017)); *see United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (courts "will not blindly accept legal conclusions nor draw unwarranted factual inferences from either the complaint or the answer.") (citing *Barber*, 31 F.4th at 387).

In addition to reviewing the allegations in the complaint and attached exhibits, a court "may consider … public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

**Analysis**

*1. Exhaustion of remedies*

The Prison Litigation Reform Act states, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust all available administrative remedies, a prisoner must follow the procedures and policies of the facility in which the incident occurred. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90, 95 (2006).

A prisoner's failure to exhaust administrative remedies is an affirmative defense that a defendant must raise, *Jones*, 549 U.S. at 216, and prove, *Bushong v. Delaware City Sch. Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021) (citing *Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014)). "Because the failure to exhaust is an affirmative defense, dismissal under Rule 12(b)(6) or 12(c) is appropriate only if the face of the complaint shows that the plaintiff has not in fact exhausted her administrative remedies." *Bushong*, 851 F. App'x at 545 (citing *Jones*, 549 U.S. at 215).

Here, Defendants in their Motion assert that Stubbs "only sent [two] grievances" about religion—his complaints about the food service during Ramadan. Doc. 26, at 15. Stubbs did not, Defendants contend, "'sen[d] a grievance to the chaplain when [he] first got booked in the county jail for [his]

6

religious belief.'" *Id*. (citing Stubbs's complaint). In other words, Defendants allege that Stubbs failed to grieve the claim alleged in his Complaint.

It is true that to administratively exhaust a claim a party must grieve the same allegations contained in the complaint. *See, e.g., Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002). But in his verified Complaint, Stubbs states that he *did* grieve to the Chaplin "to make sure I was labeled as Muslim." Doc. 1 at 2, ¶9. So dismissal under Rule 12(c) is inappropriate here because the face of Stubbs's Complaint does not show that he failed to exhaust his administrative remedies. *See Bushong*, 851 F. App'x at 545. There are facts in dispute about this issue, and at this stage the Court must view the facts in the light most favorable to Stubbs. *See Barber*, 31 F.4th at 386–87; *Rembisz*, 590 F. App'x at 504 ("At the motion to dismiss stage, courts are bound to accept the well-pleaded allegations of a complaint as true and to draw inferences and resolve ambiguities in a plaintiff's favor.").

Defendants assert that Stubbs "has not, and cannot, provide any proof or evidentiary quality material to support [his] claims." Doc. 26, at 11. But at this stage Stubbs doesn't have to provide proof to support his claims—he only has to allege in his Complaint facts that "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. And this he has done. Stubbs states that he grieved the issue he complains of in his Complaint—that the Jail refused to classify him as Muslim. So Defendants are not entitled to judgment on the pleadings for Stubbs's alleged failure to exhaust his claim. *See Bushong*,

7

851 F. App'x at 545 (observing that the district court erroneously "relied upon unsubstantiated assertions[6] made by the defendants in their motion" when evaluating a Rule 12(c) motion; "it is black-letter law that, with a few . . . exceptions, a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings.") (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)).

In their reply brief, Defendants submit that Stubbs "relies on the submission of kites and the two grievances" and asserts that "there is no evidence that the grievances were ever appealed, despite the clear availability of such remedy." Doc. 29, at 4. The problem is that Defendants do not identify Stubbs's "remedy," let alone show the "clear availability of [it]." Defendants

---

[6] The Defendants have not substantiated their allegation that Stubbs did not grieve the claim that he alleges in the Complaint. Had they done so, I might have decided to consider any relevant attachments as central to the claims in the complaint, *see, e.g., McIntyre v. Halen*, No. 3:13-cv-1365, 2014 WL 3672118, at *3 (M.D. Tenn. July 23, 2014) (considering the sheriff's office's grievance policy, declaration of that office's records custodian, and a list of the plaintiff's grievances without converting the defendant's Rule 12(b)(6) motion to a summary judgment motion because the above items were either public records or referenced in the complaint and central to the plaintiff's claims), or converted the Rule 12(c) Motion to a Rule 56 motion, *see, e.g., Aguirre v. Corr. Corp. of Am.*, No. 4:08-cv-2365, 2009 WL 2423702, at *3–4, 6 (N.D. Ohio Aug. 3, 2009) (converting the defendant's Rule 12(b)(6) motion to a summary judgment motion when both parties attached to their motion papers declarations, grievances, and the prison grievance policy). Or I might have decided that neither of these options would have been prudent and denied the Rule 12(c) Motion. *See, e.g., Montgomery v. Harrison*, No. 3:22CV-P364, 2024 WL 1815372, at *2 (W.D. Ky. Apr. 25, 2024). The only route to take here, given the factual dispute in the pleadings and the lack of presented evidence to resolve that factual dispute, is to deny Defendants' Rule 12(c) Motion.

have not submitted the Jail's grievance policy, so I can't determine whether Stubbs complied with it. The grievance forms are labeled "Inmate Grievance/Appeal Form," so it's not even clear from the face of these forms that Stubbs had to separately appeal. Defendants don't explain what Stubbs's "kites" are and how, if at all, they differ from a "grievance." Simply put, all the Defendants offer the Court are "unsubstantiated assertions," which are improper bases for granting judgment on the pleadings.[7] *See Bushong*, 851 F. App'x at 545.

*2. Failure to state a claim*

Defendants argue that Stubbs fails to state a First Amendment claim against them because Stubbs hasn't demonstrated that Defendants' acts impinged on his free exercise of religion. Doc. 26 at 16. Defendants submit that that "courts have consistently found that isolated acts or omissions do not create a substantial burden on the First Amendment free exercise of religion." *Id.* (citing cases). They state:

> Plaintiff's Complaint pertains ***only*** to an isolated act, i.e., his allegedly being deprived of an April 11, 2024 religious feast that he was allegedly entitled to which marked the end of Ramadan. This action is not sufficient to state a claim for violation of the First Amendment. Plaintiff does not specify any CCCC policy or action taken through any County officials that prohibited, much less "substantially impair" the free exercise of his religion.

---

[7] The Defendants are free to assert a failure-to-exhaust-remedies argument in a summary judgment motion and provide relevant evidence in support, such as the Jail's grievance policy and declarations.

9

*Id*. at 17.

To the extent Defendants assert that depriving Stubbs of participation in the Eid feast was only one isolated act insufficient to allege a First Amendment violation, they are mistaken. *Maye v. Klee*, 915 F.3d 1076 (6th Cir. 2019), is factually similar to this case. There, prison officials told Maye that he could only participate in Eid if he "'change[d] [his] religion' from Nation of Islam to Al-Islan, a different sect of Islam." 915 F.3d at 1081. Maye didn't change his religion, so he wasn't permitted to participate in the feast. *Id*. The next year, Maye was scheduled to work during Eid; requested a "call-out from his work detail" so he could participate; but didn't receive a work call-out and again couldn't participate in the feast. Tr. 1082. The Court affirmed the district court's partial grant of summary judgment to Maye on his First Amendment claim, and explained:

> Importantly, we have held that denying inmates the ability to participate in a group Passover Seder—even though the ceremony only lasts "a few hours once a year"—violates their free exercise rights under the First Amendment, given that "Passover is an especially critical and very special time in the Jewish religion." *Whitney v. Brown*, 882 F.2d 1068, 1073 (6th Cir. 1989). The two annual Eid feasts are the functional equivalent for Muslims.…Thus, Maye's factual allegations, taken as true, would compel the same conclusion here—denying a Muslim inmate the opportunity to partake in Eid would substantially burden his free exercise rights, so Maye has alleged a deprivation of his rights under the Free Exercise Clause.

*Id*. at 1083. The court rejected the officials' argument that these were "isolated incidents," concluding that "this argument makes the same mistake we highlighted in *Whitney*: it overlooks the significance of a religious event such as Passover or Eid, which is plainly incomparable to the harm of missing one weekly religious service or being denied a kosher meal on an isolated occasion." *Id*. at 1083–84.

Next, Defendants downplay the "feast," describing it as "a treat box, which typically consisted of a sweet item such as a date, provided by Council on American Islamic Relations (CAIR) to inmates designated as Muslim in celebration of Ramadan." Doc. 26 at 17. But Defendants haven't cited legal authority indicating that the type or quantity of food provided for a religious feast lessens the importance of that feast and the constitutional protections that are attached to it.

Defendants admit that "[t]he CAIR organization provides the treat and/or 'feast' only to those inmates designated 'Muslim' in the Jail's booking system" and reiterate that Stubbs didn't designate a religious status when he was booked into the jail. Doc. 26 at 17. But this is the whole point of Stubbs's claim. Stubbs alleges that Defendants don't permit inmates to change their religious-affiliation information after it has been entered on the booking form.[8] Doc. 1 at 3. This practice, Stubbs alleges, violates his First Amendment rights,

---

[8]  Stubbs also points out that "there are individuals who will convert [in jail] to Islam as their religion." Doc. 1 at 4, ¶15.

11

*see id.*, and these allegations are sufficient to state a claim upon which relief can be granted, *see Maye*, 915 F.3d at 1083–84.

Defendants suggest that they have "legitimate penological security" to maintain and assert that the Jail "provides incarcerated individual with meaningful opportunities to engage in worship." Doc. 29 at 9. It's true that a jail may show that it has a valid "penological justification" for denying an inmate the opportunity to practice religion. *See Maye*, 915 F.3d at 1084. But Defendants haven't advanced any penological justification for the restriction Stubbs alleges in his Complaint, even if advancing such a justification would be appropriate to do so at the motion-for-judgment-on-the-pleadings stage.

Defendants argue that the two grievances they claim Stubbs did file—which had to do with the portions of Ramadan meals, Docs. 12-1, 12-2—"demonstrate that [Stubbs] was actively engaging in Ramadan," "not expressing that he is foreclosed from partaking in Ramadan." Doc. 26 at 15. But Stubbs alleges in his Complaint that "the warden said anybody can fast during Ramadan but only Muslims can participate in the feast." Doc. 1 at 2, ¶9. So Stubbs's fasting during Ramadan and his receipt of Ramadan meals does not show that the jail had classified him as Muslim, and it does not address the Jail's alleged refusal to let Stubbs participate in the feast.

"[E]ven if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some other way directly

12

participated in it.'" *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002), in turn quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Defendants cite this law and argue that Stubbs's claims against Warden Henry, Associate Warden O'Donnell, and Pastor Givens are "improperly based on their position[s] as supervisor[s]."[9] Doc. 26 at 21.

In his Complaint, Stubbs alleges that the "Wardens … stated if a person was not booked in as a Muslim, th[e]n they are not Muslim." Doc. 1 at 3, ¶12. He alleges that Pastor Givens "stated [Stubbs] wasn't Muslim when [Givens] is the Chaplin of Cuyahoga County Jail." *Id.* at 11. These specific factual allegations are sufficient to show that Warden Henry, Associate Warden O'Donnell, and Pastor Givens either acted themselves or "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *See Combs*, 315 F.3d at 558 (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)); *cf. George v. Ballard*, No. 17-5161, 2017 WL 7550768, at *2 (6th Cir. Aug. 23, 2017) ("George's complaint contains no specific factual or legal allegations against either individual, alleging only that each was 'legally responsible' for the operation of the Northpoint Training Center.").

---

[9] In their reply brief, Defendants move from "supervisory" liability to "vicarious" liability. Doc. 29 at 6. Defendants' vicarious liability arguments fail for the same reason as their supervisory liability argument.

*3. Qualified immunity*

Defendants allege that they are entitled to qualified immunity. Doc. 26 at 18. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, a court asks whether: (1) "the plaintiff's version of the facts alleges the deprivation of a constitutional right"; and (2) "that right was clearly established such that a reasonable official would have known his actions were unconstitutional." *Maye*, 915 F.3d at 1082 (citing *Morgan v. Fairfield Cty.*, 903 F.3d 553, 560 (6th Cir. 2018), in turn citing *Harlow*, 457 U.S. at 818).

As explained above, Stubbs's version of the facts alleges the deprivation of a constitutional right. Defendants do not argue that the right was not clearly established.[10] *See* Doc. 26, at 20; *see also Maye*, 915 F.3d at 1087 (citing cases

---

[10] Defendants sketch the legal standard for what "clearly established" means, but they don't apply that standard to the allegations in Stubbs's Complaint. They also conclude that Stubbs can't show that the alleged conduct is "sufficiently shocking to the conscience [to] support a Fourteenth Amendment claim." Doc. 26 at 26. But Defendants don't explain why a Fourteenth Amendment shocks-the-conscious test would apply to Stubbs's First Amendment free-exercise-of-religion claim. *See, e.g., Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (explaining that the Fourteenth Amendment "'shocks the conscience' test would not apply to § 1983 claims based expressly on the First Amendment.").

14

showing that inmates' rights to participate in Eid "were clearly established in 2013 and 2014."). And after the Sixth Circuit's decision in the factually similar *Maye* case, any reasonable official should have known that the actions alleged in Stubbs's complaint would have violated clearly established constitutional rights.

In their reply brief, Defendants submit that even if Stubbs can meet both prongs of the qualified immunity standard, "there is insufficient evidence to show that Defendants' conduct was objectively unreasonable." Doc. 29, at 5–6. The case they cite in support, *Cobbs v. Pramstaller*, 475 F. App'x. 575, 579 (6th Cir. 2012), is a summary judgment case, not a case decided at the pleadings stage. Stubbs has alleged in his Complaint conduct on the part of the two Wardens and Pastor Givens which is specific enough to survive a Rule 12(c) Motion. In all, Defendants have not shown that they are entitled to qualified immunity.

*4. Damages liability*

Defendants argue that Stubbs may not recover compensatory or punitive damages on his individual-capacity claims without suffering a physical injury. Doc. 26, at 21. And because Stubbs hasn't suffered a physical injury, Defendants reason, he may not recover compensatory or punitive damages for any mental or emotional injuries, either. *Id.* at 22; *see* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury

15

suffered while in custody without a prior showing of physical injury or the commission of a sexual act.").

But a plaintiff alleging a First Amendment violation need not suffer a physical injury to recover compensatory damages so long as the plaintiff "alleges a constitutional injury distinct from any mental or emotional injury he might have suffered." *King v. Zamiara*, 788 F.3d 207, 214 (6th Cir. 2015). Here, Stubbs alleges that his "[F]irst [A]mendment rights of the United States[] to practice religion" has been violated. Doc. 1 at 3, ¶13. He alleges that he "h[as] not been able to at[t]end Friday service (Jummah)." *Id*. These allegations describe an "actual injury" for which compensatory damages are available. *See King*, 788 F.3d at 213–15. And Defendants have not shown that punitive damages would be prohibited. *See id.*, at 216–17; *see also Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020).

### 5. *Stubbs may not add new claims in a motion brief*

In his brief in opposition to Defendants' Motion, Stubbs argues for the first time that Defendants' conduct violated the Religious Land Use and Institutionalized Persons Act. Doc. 28, at 3. As Defendants point out, Doc. 29 at 10, Stubbs didn't allege such a claim in his Complaint. He is not permitted to add it now, through his opposition brief. *See, e.g., Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). And to the extent that Stubbs in his opposition brief alleges facts that would

16

support a different claim than the one he alleged in his Complaint, *see* Doc. 28 at 4 (referencing Ramadan meals), this is also inappropriate. *See Thomason*, 888 F.2d at 1205. This case will proceed on the First Amendment claim that Stubbs alleged in his Complaint—that Warden Henry, Associate Warden O'Donnell, and Pastor Givens refused to let Stubbs classify himself as Muslin, and in doing so violated Stubbs's right to practice his religion by participating in the Eid feast. *See* Doc. 1.

### Conclusion

For the reasons explained above, Defendants' Motion for Judgment on the Pleadings, Doc. 26, is denied. The Defendants' Motion to stay discovery pending a ruling on their motion, Doc. 27, is denied as moot.

Dated: June 4, 2025

                                       */s/ James E. Grimes Jr.*
                                       James E. Grimes Jr.
                                       U.S. Magistrate Judge